EDDY BELLEFEUILLE *vs.* JOSEPH P. MEDEIROS.

Bristol.   October 29, 1956. — January 10, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Fraud. Deceit. Sale,* Rescission, Sale of business. *Equity Jurisdiction,* Rescission. *Damages,* On rescission.

A false statement made by a seller of a small manufacturing business to the buyer and relied on by the buyer, who was inexperienced in that business, as to the availability in the market at a certain price of cloth used in the manufacturing was a statement of fact as of the seller's own knowledge and constituted a basis for rescission of the sale at the instance of the buyer whether the statement was made with consciousness of its falsity or innocently and notwithstanding a failure of the buyer to investigate its truth or falsity. [265]

In a suit in equity by a buyer of a business for rescission of the sale by reason of a false representation by the seller, the rule of damages was not that applicable in an action for deceit, and the plaintiff's damages were properly assessed in the amount of the purchase price paid by him less the value of the property received by him in the sale where he was unable to restore it to the defendant. [265–266]

A buyer of property seeking rescission of the sale in a suit in equity against the seller by reason of a false representation by the defendant was not barred from relief in the circumstances by the fact that he was unable to restore the property to the defendant because some of it had been sold by the plaintiff and some had been damaged; the defendant's rights were equitably protected by a decree for repayment of the purchase price by the defendant with a credit to him of the fair value of the property at the time of the sale.   [266]

BILL IN EQUITY, filed in the Superior Court on September 7, 1954.

The suit was heard in part by *Smith,* J., and, after a reference to a master, was again heard by him on the master's report.

*Solomon Rosenberg,* for the defendant.

*Louis A. Perras, Jr.,* for the plaintiff, submitted a brief.

SPALDING, J.   This is a bill in equity in which the plaintiff seeks to rescind the sale of a business because of fraud. The judge made findings of material facts of which the following is a summary: In August, 1954, the defendant was the owner of a business in Fairhaven which he conducted under the name of "F. & B. Cutrate & Fleet Bag Co." The business consisted of a small dry goods store and an adjoining shop in which the defendant manufactured scallop bags.[1] The defendant desired to sell the business and employed one Mello to sell it for him. Mello brought the plaintiff to see the defendant, and negotiations began for the sale of the business. During these negotiations the defendant told the plaintiff that he (the defendant) could obtain cloth for the manufacture of scallop bags at a certain price per yard, and that if the plaintiff bought the business he would obtain the cloth for the plaintiff. The plaintiff had no previous experience either in operating a dry goods store or in manufacturing scallop bags, and relied upon the statements made by the defendant as to the volume of business and profits "and particularly upon the defendant's statement that he could obtain cloth for the manufacture of the scallop bags." On August 16, 1954, an agreement

[1] These bags were made of cloth of loose texture and were used by fishermen as containers for scallops.

having been reached for the sale of the business including the stock, fixtures and good will, the defendant executed and delivered a bill of sale to the plaintiff in return for $4,500, the agreed purchase price.

The plaintiff took possession of the store and shop and undertook to carry on the business. There was no cloth for the manufacture of scallop bags available at this time and the plaintiff made "repeated requests of the defendant to obtain cloth for him, relying upon the defendant's representation that cloth was available and that he, the defendant, would obtain it for him." The defendant at various times "agreed to take the plaintiff to cloth dealers, but never kept appointments made for that purpose, and finally under a pretext that news of the sale by him to the plaintiff had leaked out, because of which dealers would not sell cloth, told the plaintiff that he could not obtain the cloth."

The "representations made by the defendant, relative to the availability of cloth in the market, and particularly at the price named by the defendant to the plaintiff prior to the sale were misrepresentations, either intentionally or negligently made, under circumstances for which the defendant was responsible." After making the foregoing findings the judge referred the case to a master "to determine the fair value as of February 7, 1955,[1] of the equipment, goods in process, goods manufactured, good will, the stock in trade, and any and all other chattels and assets obtained by the plaintiff from the defendant as a result of said sale, and the amount and value of all such assets received in any sale or disposition by the plaintiff of the goods received, and the total amount of the damages sustained, if any, by the plaintiff."

After hearing the parties, pursuant to the foregoing order of reference, the master filed a report. It was agreed that the machinery and equipment involved in the sale had been submerged in flood waters resulting from the hurricane of August 31, 1954. The value of this property was deter-

[1] This apparently, was the date of the commencement of the hearing before the judge.

mined, by consent of the parties, on the basis of its condition before submersion. The master found the value of this and the other property involved in the sale to be $1,964.43.[1] Deducting this sum from the purchase price of $4,500 he found that the damages sustained by the plaintiff, exclusive of interest and costs, was $2,535.57.

An interlocutory decree was entered confirming the master's report and overruling the defendant's exceptions thereto. A final decree was entered adjudging that the sale be set aside and awarding damages to the plaintiff in the sum of $2,753.35. The defendant appealed. The evidence is not reported.

1. Contrary to the defendant's contention, we are of opinion that on the findings the representations as to the availability and price of the cloth concerned matters susceptible of knowledge and were stated as facts and not as opinion and hence were of the sort that would support a decree for rescission. They were "misrepresentations, either intentionally or negligently made," and the plaintiff relied on them. If the statements were knowingly false there was plainly a basis for rescission. *Rykiel* v. *Sklaver*, 259 Mass. 608, 611. *Lang* v. *Giraudo*, 311 Mass. 132, 138. *Verville* v. *Mason*, 334 Mass. 322. But a false, though innocent, representation which concerns a matter susceptible of knowledge and is stated as a fact and not as opinion may afford the basis of rescission. *Rudnick* v. *Rudnick*, 281 Mass. 205, 208. *Yorke* v. *Taylor*, 332 Mass. 368, 371, and cases cited. The defendant's contention that relief is precluded by the plaintiff's failure to investigate the truth or falsity of the defendant's representations is without merit. *Yorke* v. *Taylor*, *supra*, at pages 372-374.

2. The damages awarded to the plaintiff were determined on the basis of the difference in value between what the plaintiff paid and what he actually received. Relying on the rule of damages applicable in actions of tort for deceit, the defendant argues that the rule applied by the judge

---

[1] The master determined the valuation as of August 16, 1954 (the date of the sale), and as of February 7, 1955, and found the value in each case to be the same.

was improper.  Were this an action for deceit the defendant's contention would be correct, for in such cases the rule is "the difference in actual value between that which the plaintiff in fact got and that which he would have got if the representation had been true."  *Piper* v. *Childs*, 290 Mass. 560, 562.  *Ceder* v. *McCarthy*, 320 Mass. 618, 619.  But this is not an action for deceit.  The bill sought rescission and the case was tried and decided on that theory.

We are mindful that the judge found that at no time did the plaintiff restore or offer to restore to the defendant what he had received from him.  Ordinarily one seeking rescission of a transaction must restore or offer to restore all that he received under it.  *Fitch* v. *Ingalls*, 271 Mass. 121.  *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517.  Restatement: Restitution, § 66.  This requirement is applied with considerable strictness at law (see, for example, *Bassett* v. *Brown*, 105 Mass. 551, 558; *Marston* v. *Singapore Rattan Co.* 163 Mass. 296, 302; *Owen* v. *Button*, 210 Mass. 219, 222) but the rule is more liberal in equity and it has been held that, where complete restoration is not possible, rescission may, nevertheless, be granted upon such equitable conditions as would amply protect the rights of the defendant.  *Thomas* v. *Beals*, 154 Mass. 51, 55.  *Putnam* v. *Bolster*, 216 Mass. 367, 372.  *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 477-478.  *J. C. Penney Co.* v. *Schulte Real Estate Co. Inc.* 292 Mass. 42, 46.  *Lang* v. *Giraudo*, 311 Mass. 132, 139.  The final decree awarding the plaintiff the return of the purchase price credited the defendant with the fair value of the property transferred by him.  It was not possible for the plaintiff to restore the property acquired, for a substantial portion of it had been sold prior to the hearing.  That which had been damaged by the flood was valued on the basis of its condition prior to the flood.  In these circumstances we are of opinion that the plaintiff's failure to restore what he had received did not preclude his obtaining the relief granted by the decree below.

In this respect the case at bar bears considerable resemblance to the case of *Putnam* v. *Bolster*, 216 Mass. 367.  In

that case the plaintiff entered into an agreement to purchase a liquor license together with certain furniture and fixtures, and the plaintiff paid part of the purchase price. It later turned out that authority to transfer the liquor license (the principal thing bargained for) could not be obtained from the licensing authorities. In the meantime the plaintiff had sold some of the furniture acquired from the defendant. In a suit to rescind for failure of consideration it was held that the plaintiff could recover back the portion of the purchase price paid less the value of the furniture which had been sold. The court, while recognizing that in these circumstances there would be no right to rescind at law, stated that the bill could, nevertheless, be maintained by imposing conditions which would preserve the defendant's rights. Cases in other jurisdictions tend to support the conclusion here reached. *Green* v. *Duvergey,* 146 Cal. 379, 389. *Mosteller* v. *Braham,* 90 Cal. App. 715, 717. *Basye* v. *Paola Refining Co.* 79 Kans. 755, 757. *Wright* v. *Dickinson,* 67 Mich. 580, 589. *Buffalo Builders Supply Co.* v. *Reeb,* 247 N. Y. 170, 176. See Williston on Contracts (Rev. ed.) § 1530. Moreover, the defendant does not argue that the inability of the plaintiff to restore the status quo precludes the relief granted below. His objection to the damages awarded is based solely on the assumption that the action is in essence one for deceit. But, as we have pointed out above, the case was not tried on that theory. We are not to be understood as abrogating the requirement of restoration where the proceedings are in equity. Even in equity restoration should be the rule and rescission without it the exception. We hold only that in the circumstances here obtaining the·decree below was not inequitable.

3. The defendant finally urges that the judge erred in confirming the master's report. Some of the objections urged against confirmation have already been discussed. The other objections have been examined and we find no merit in them.

*Interlocutory decree affirmed.*
*Final decree affirmed with*
*costs of appeal.*